■ In the Matter of the Estate of JOSEPH KALICHMAN, Deceased. ANNE K. PFEFFER, Respondent; MORRIS KALICHMAN, Appellant; LINDA HILLER, Respondent, et al., Respondent. [820 NYS2d 651]—

Carpinello, J. Appeal from an order of the Surrogate's Court of Albany County (Doyle, S.), entered December 7, 2005, which, inter alia, granted petitioner's application to remove respondent Rose Kalichman as preliminary executor of the estate.

Joseph Kalichman (hereinafter decedent) died in December 2002 leaving behind a wife (respondent Rose Kalichman), two daughters (petitioner and respondent Linda Hiller) and a son (respondent Morris Kalichman). His November 2000 last will

and testament was offered for probate by his wife, who was designated therein to serve as the executor. She was thereafter appointed preliminary executor. In May 2005, this proceeding was commenced by petitioner seeking the wife's removal on the ground that she had concealed the existence of an $11 million Israeli bank account from Surrogate's Court. The application was granted and decedent's wife was removed.

Of note, the propriety of this ruling is not before this Court since decedent's wife does not challenge her removal on appeal. Rather, the precise issue before us concerns the decision of Surrogate's Court to replace decedent's wife with an independent temporary administrator, as opposed to appointing decedent's son as the successor preliminary executor. We find that Surrogate's Court did not abuse its discretion in so refusing to appoint decedent's son and, thus, we affirm.

To the extent that decedent's son complains that the limited record before us contains insufficient evidence of serious wrongdoing on his part to support the decision not to appoint him as a successor executor, we are compelled to note that he never made the requisite formal application to be so named (even though his attorney did file an affidavit objecting to the wife's removal) (*see* SCPA 1412).[1] In any event, we are satisfied that there is a bona fide issue of undue influence alleged against decedent's son such that Surrogate's Court did not abuse its discretion in not appointing him as successor preliminary executor and instead appointing an independent temporary administrator (*see* SCPA 707 [1] [e]; 1412 [5]; *Matter of Scamardella*, 238 AD2d 513, 514 [1997], *lv dismissed* 90 NY2d 935 [1997], *affg* 169 Misc 2d 55 [1996]; *Matter of Ranney*, 273 App Div 1057 [1948], *affg* 78 NYS2d 602 [1948]; *Matter of Pearson*, 228 App Div 418, 419 [1930]; *Matter of Watson*, 209 App Div 876 [1924], *appeal dismissed* 239 NY 506 [1924], *affg* 123 Misc 323 [1924]; *Matter of Smith*, 71 Misc 2d 248, 251 [1972]; *see also Matter of Singer*, 2 Misc 3d 665, 667 [2003]).

In its decision, Surrogate's Court refused to appoint decedent's son on the precise ground that he had accompanied his mother on the latest of her two then recent trips to Israel. According to decedent's son, "merely" accompanying his 83-year-

---

1. To be sure, after the return date of petitioner's motion, the son's attorney did send a letter to Surrogate's Court in which counsel "point[ed] out" that his client was nominated as successor executor under decedent's will and therefore was "entitled to replace" his mother. Petitioner, in turn, objected to this informal request on the ground that her brother's undue influence on decedent and, possibly, their mother was a "fundamental" aspect of her objections to the will being probated.

old mother on a trip was a patently insufficient basis upon which to deny him the right to be appointed successor executor. According to the petition, however, it was during these trips that decedent's wife attempted to divert the Israeli funds to herself. To this end, decedent's wife readily admitted that she traveled to Israel with her son "to request information [from the Israeli bank] in person." Moreover, it is undisputed, and indeed curious, that following this joint trip, decedent's wife was informed by the Israeli bank that an order of probate or succession was needed to distribute the funds and that she thereafter offered a 1983 will executed by decedent for probate in an Israeli court without informing that court of the existence of the 2000 will.[2] This sequence of events, while not directly implicating decedent's son in any wrongdoing, nevertheless supports our conclusion that Surrogate's Court did not abuse its discretion in refusing to appoint him as the successor executor.

Mercure, J.P., Mugglin, Rose and Kane, JJ., concur. Ordered that the order is affirmed, with one bill of costs.

2. Upon learning of the instant proceeding, the attorney representing decedent's wife in Israel brought an application to postpone that proceeding.